FRANKLIN MILLS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55302. Promulgated May 31, 1933.

J. Robert Sherrod, Esq., for the petitioner.
George D. Brabson, Esq., for the respondent.

OPINION.

TRAMMELL: This is a proceeding for the redetermination of a deficiency in income tax for the year 1927 in the amount of $4,926.62. The sole issue is whether or not the respondent erred in failing to allow the sum of $101,706.87 as a loss or bad debt deduction from gross income for the taxable year, or in the alternative as losses resulting from embezzlement in the years 1925, 1926 and 1927, as more fully stated below.

The petitioner is a South Carolina corporation, with its principal place of business at Greenville. Its manufacturing plant is located at Greer. During the years 1925, 1926 and 1927, one W. E. Mason owned 50 percent of the petitioner's stock, was president and treasurer of the corporation, and was in charge of its financial affairs. During those years one E. H. Shanklin owned 50 percent of the petitioner's stock, was vice president and manager of the corporation, and looked after the manufacturing end of the business. Shanklin, who is now president of the petitioner, first became connected with the corporation as a stockholder in 1917.

In addition to his interest in the petitioner corporation, Mason was also engaged in buying and selling cotton, and sold some cotton to the petitioner. He also owned a seat on the New York Cotton Exchange. During the years from 1924 to 1927 Mason borrowed money from the petitioner and had other transactions with it which were recorded in open accounts and on the corporation's books, entitled " W. E. Mason " and " W. E. Mason & Company." This company was a corporation which was controlled by Mason.

At the end of the year 1924 the account of Mason & Co. showed a credit balance of $7,711. The corporation owed this amount to Mason. At the end of 1925, 1926 and 1927, Mason's account showed debit balances of $42,729.82, $85,365.44 and $101,706.87, respectively. At the end of each of those years, Mason owed to the petitioner the amount of the debit balance stated.

Mason was never formally authorized by the directors to borrow or withdraw money from the corporation for use in his personal or private business transactions or speculations, nor did he have authority to do so under the bylaws of the corporation.

The petitioner contends, first, that the withdrawal of its funds by Mason for his personal use aggregating $101,706.87 at the end of the taxable year 1927, constituted a bad debt which it is entitled to deduct from gross income for that year. However, it is affirmatively shown, and the facts on this point admitted, that the indebtedness was not ascertained to be worthless until some time in the year 1928,

and was not charged off the corporation's books until subsequent to the close of the year 1928. Since the debt was neither ascertained to be worthless nor charged off during the year 1927, it is not an allowable deduction from gross income for that year. Sec. 234 (a) (5), Revenue Act of 1926; *American Photo Player Co.*, 2 B.T.A. 419; *Warren-Smith Hardware Co.*, 7 B.T.A. 292; *Rufus H. Syfers*, 22 B.T.A. 736; *S. G. Armstrong*, 24 B.T.A. 321; *Robinson-Davis Lumber Co.* v. *Crooks*, 50 Fed. (2d) 638.

Petitioner contends in the alternative, and it is mainly upon this theory that petitioner rests its case, that the withdrawal of the corporate funds by Mason for use in his personal business, being unauthorized, constituted embezzlement, and that the amount so embezzled during each of the years 1925, and 1926 and 1927 represents a loss to the corporation which it is entitled to deduct from gross income for the respective years. On this phase of the case, we are confronted at the outset with lack of proof sufficient to show our jurisdiction to determine whether or not the petitioner is entitled to such deductions in respect of the years 1925 and 1926.

The appeal before us is for the redetermination of the deficiency in respect of the taxable year 1927, and in that connection we may only consider such facts with relation to the petitioner's taxes for 1925 and 1926 as may be necessary correctly to redetermine the amount of the deficiency for 1927. We have no jurisdiction to determine whether or not the tax for any other taxable year has been overpaid or underpaid. Sec. 274 (g), Revenue Act of 1926.

The petitioner alleges in its amended petition and argues on brief that the deductions claimed for 1925 and 1926, if allowed, would result in net losses for those years " which are claimed as deductions or credits against petitioner's 1927 income under section 206 of the 1926 Revenue Act." But no proof was offered to establish the amount of petitioner's net income, computed without the claimed deduction, for either of said years, and we do not know whether the allowance of the deductions would result in net losses which would affect the petitioner's tax liability for 1927. We, therefore, confine our consideration to the facts which are shown to be necessary in order correctly to redetermine the deficiency in controversy.

During the taxable year 1927 Mason withdrew $16,341.43 from the corporation's funds, which amount the petitioner claims as a deduction on account of a loss resulting from embezzlement. Early in 1928 Mason became hopelessly insolvent and was unable to pay any part of the indebtedness which he owed to the corporation. Upon the facts disclosed, the debt then might properly have been ascertained to be worthless and charged off, and a deduction claimed from gross income for 1928. As before stated, that was not done, and

no deduction for a worthless debt is allowable from income for 1927. If the petitioner is entitled to deduct from income for the taxable year the amount withdrawn by Mason in that year, it can only be on the ground that it represents a loss from embezzlement.

Embezzlement, larceny after trust, larceny by bailee, and similar offenses all embrace the idea of fraudulent intent, which we think the facts of this case wholly fail to disclose. During the years from 1927 as far back at least as 1924, Mason borrowed or withdrew money from the corporation for personal uses and charged the same to his account or to the account of W. E. Mason & Co., which accounts appear to have been treated substantially as one account. At the end of 1924 this account showed a credit balance, and for each of the three succeeding years, a debit balance. Mason and Shanklin each owned 50 percent of the corporation's stock, and it is shown that Shanklin knew of the existence of Mason's account, which he referred to in his testimony as a "pro and con" account. These transactions were carried on prior to 1928 not only with the knowledge of Shanklin, but with his consent or at least not against his objection. It is further indicated that Shanklin also had a personal account with the corporation on its books, and that whenever he desired to withdraw money from the corporation it was charged to such account.

Mason's account was included in the total accounts receivable shown on the balance sheets of the corporation which were furnished to Shanklin, and while he testified that he did not know that Mason was withdrawing large sums from the corporation, this lack of specific knowledge resulted solely from his indifference to the matter. He readily admitted that he could have ascertained the detailed facts at any time by inspecting the corporation's books.

When the financial collapse of Mason occurred in the early part of 1928, Shanklin made a complete investigation of the situation, and thereafter took no steps to bring about a criminal prosecution of Mason for embezzlement or other offense, nor did he institute bankruptcy proceedings. Shanklin testified that he refrained from such action out of sympathy for Mason, and because it would result in no benefit to himself or the corporation.

However, we are unable to conclude from the evidence before us that the petitioner sustained any loss in 1927 as the result of the embezzlement of its funds by Mason. While it is true that the withdrawals were unauthorized by formal corporate action or the bylaws, yet they appear to have been made with the knowledge and consent of the holders of 100 percent of the corporate stock, and no circumstance is disclosed which would indicate criminal intent. It is our opinion, therefore, that the petitioner is not entitled to any deduction from its gross income for the taxable year, as claimed.

*Judgment will be entered for the respondent.*