George E. **JOHNSON** and Sylvia V. Johnson, Petitioners-Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 80–7570.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 7, 1982.

Decided March 26, 1982.

Charles R. Hartman, III, Fine, Perzik & Friedman, Los Angeles, Cal., argued, for petitioners-appellants; Benjamin J. Portugal, Michael B. Furman, Los Angeles, Cal., on brief.

Thomas M. Preston, IRS, Washington, D.C., argued, for respondent-appellee; Mi-

chael L. Paup, Chief Appellate Section, John F. Murray, Acting Asst. Atty. Gen., Robert T. Duffy, Kenneth L. Greene, IRS, Washington, D.C., on brief.

Before PREGERSON and FERGUSON, Circuit Judges, and WEIGEL,* District Judge.

PREGERSON, Circuit Judge:

George and Sylvia Johnson appeal a United States Tax Court determination of a $168,060 deficiency in their federal income tax for 1971. This additional tax liability, asserted by the Commissioner of Internal Revenue under the minimum tax provisions of Internal Revenue Code § 56, arose when taxpayers exercised certain employee stock options. Taxpayers dispute the Commissioner's position that the mean New York Stock Exchange trading price of the stock appropriately measured the stock's fair market value for purposes of determining the minimum tax, even though undisclosed violations of securities laws inflated the exchange price when the options were exercised. The Tax Court ruled in favor of the Commissioner. 74 T.C. 89 (1980). We affirm.

I

In 1971, Mr. Johnson exercised qualified employee stock options granted by Mattel, Inc. Mattel's employee stock option plan met the requirements of §§ 421 and 422 of the 1954 Internal Revenue Code.[1] The

---

* Honorable Stanley A. Weigel, United States District Judge for the Northern District of California, sitting by designation.

1. Section 421. GENERAL RULES.
   (a) EFFECT OF QUALIFYING TRANSFER. —If a share of stock is transferred to an individual in a transfer in respect of which the requirements of section 422(a), 423(a), or 424(a) are met—
   (1) except as provided in section 422(c)(1), no income shall result at the time of the transfer of such share to the individual upon his exercise of the option with respect to such share;

(2) no deduction under section 162 (relating to trade or business expenses) shall be allowable at any time to the employer corporation, a parent or subsidiary corporation of such corporation, or a corporation issuing or assuming a stock option in a transaction to which section 425(a) applies, with respect to the share so transferred; and

(3) no amount other than the price paid under the option shall be considered as received by any of such corporations for the share so transferred.

dates of exercise, the number of shares acquired, the option price, and the mean price of the stock on the New York Stock Exchange on the date of exercise of the options were as follows:

| Date Exercised | Shares Acquired | Option Price Per Share | Mean Price Per Share on N.Y.S.E. |
|---|---|---|---|
| 1/5/71 | 7,370 | $1.98502 | $35.6875 |
| 2/8/71 | 29,478 | $1.98502 | $43.25 |

When taxpayers filed their 1971 income tax return, they ignored I.R.C. §§ 56 and 57(a)(6),[2] which required them to report as a tax preference item the amount by which the fair market value of the shares, on the dates the stock options were exercised, exceeded the option price. The Commissioner determined that the excess constituted a tax preference item under §§ 56 and 57(a)(6) and computed the amount to be taxed as the difference between the option price and the mean New York Stock Exchange price on the dates the options were exercised.[3] Implicit in the computation was the Commissioner's determination that the mean trading price represented the fair market value of the shares.

The Johnsons appealed to the Tax Court, arguing that securities laws violations committed by Mattel's officers had inflated the trading price, so that the stock exchange price on the dates the options were exercised did not accurately represent the fair market value of the shares. The Tax Court upheld the Commissioner's determination that the fair market value of Mattel stock was the mean New York Stock Exchange price on the dates the stock options were exercised.

II

In 1973, former Mattel shareholders filed a class-action suit against Mattel, alleging violations of federal securities laws. In August 1974, Mattel was enjoined from violating antifraud and corporate reporting provisions of the Securities Exchange Act of 1934. On September 6, 1974, trading of Mattel shares on the New York Stock Exchange and the Pacific Coast Stock Exchange was suspended. At that time, Mattel common stock traded at $1 per share.

In 1977, the federal district court approved a settlement in the class-action litigation. The settlement provided for a $34 million fund consisting of cash and securi-

. . . .

Section 422. QUALIFIED STOCK OPTIONS.
(a) IN GENERAL.—Subject to the provisions of subsection (c)(1), section 421(a) shall apply with respect to the transfer of a share of stock to an individual pursuant to his exercise of a qualified stock option if—
(1) no disposition of such share is made by such individual within the 3-year period beginning on the day after the day of the transfer of such share, and
(2) at all times during the period beginning with the date of the granting of the option and ending on the day 3 months before the date of such exercise, such individual was an employee of either the corporation granting such option, a parent or subsidiary corporation of such corporation, or a corporation or a parent or subsidiary corporation of such corporation issuing or assuming a stock option in a transaction to which section 425(a) applies.

2. Section 56. IMPOSITION OF TAX.
(a) IN GENERAL.—In addition to the other taxes imposed by this chapter, there is hereby imposed for each taxable year, with respect to the income of every person, a tax equal to 10 percent of the amount (if any) by which—
(1) the sum of the items of tax preference in excess of $30,000, is greater than
(2) the sum of—
(A) the taxes imposed by this chapter for the taxable year ... reduced by the sum of the credits allowable ... [and]
(B) the tax carryovers to the taxable year
. . . .
. . . .
Section 57. ITEMS OF TAX PREFERENCE.
(a) IN GENERAL.—For purposes of this part, the items of tax preference are—
. . . .
(6) STOCK OPTIONS—With respect to the transfer of a share of stock pursuant to the exercise of a qualified stock option (as defined in section 422(b)) or a restricted stock option (as defined in section 424(b)), the amount by which the *fair market value* of the share at the time of exercise exceeds the option price.
[Emphasis added.]

3. The Commissioner also assessed a five percent additional tax under I.R.C. § 6653(a) because of negligent or intentional underpayment of income taxes. This amount is not in dispute.

ties to be distributed to current and former shareholders of Mattel who acquired stock between May 1, 1968 and December 31, 1975. The Johnsons shared in the distribution.

In 1978, five persons who were officers, directors, and employees of Mattel pleaded nolo contendere to numerous criminal securities law violations.

## III

Qualified employee stock options receive tax preference treatment under I.R.C. §§ 421 and 422. An employee granted qualified stock options may acquire the employer's stock at below-market prices without realizing taxable income either when the option is granted or when it is exercised. An employee who holds the stock for at least three years and meets the other requirements of §§ 421 and 422 may defer all tax liability until ultimate sale or disposition of the stock. I.R.C. §§ 422(a)(1)–(2), 422(b)(1)–(7). Upon final disposition, income or gain is measured by the difference between what the employee paid for the stock (the option price at time of exercise) and the amount realized upon final disposition. The gain is taxed at long-term capital gains rates.

To prevent excessive deferment of tax liability under §§ 421 and 422 through qualified stock options and other tax preference items, Congress enacted Internal Revenue Code §§ 56 and 57. The minimum tax provisions of § 56 apply to a stock option's "bargain element."

Section 57(a)(6) defines the bargain element as "the amount by which the fair market value of the share at the time of exercise exceeds the option price." The parties in this case disagree on the fair market value of the stock at the time the Johnsons exercised their options.

The Johnsons argue that the fair market value of the stock was actually much lower than the New York Stock Exchange price because Mattel's illegal practices had artificially inflated the market. A lower fair market value would have lowered the amount of minimum tax the Johnsons owe under § 56.

Neither the legislative history of § 57(a)(6) nor the applicable Treasury Regulations specify how fair market value is to be determined. Treasury Regulation 1.57–1(f) (1978) provides only that fair market value is to be determined "as of the date the option is exercised."

## IV

Although the stock exchange price generally is the best indicator of fair market value, *United States v. Cartwright*, 411 U.S. 546, 551, 93 S.Ct. 1713, 1716, 36 L.Ed.2d 528 (1973), courts have recognized limited exceptions to this general principle when no open market exists. *See Seas Shipping Co. v. Commissioner*, 371 F.2d 528 (2d Cir.), *cert. denied*, 387 U.S. 943, 87 S.Ct. 2076, 18 L.Ed.2d 1330 (1967); *MacDonald v. Commissioner*, 230 F.2d 534 (7th Cir. 1956); *Heiner v. Crosby*, 24 F.2d 191 (3d Cir. 1928); *Phillips v. United States*, 12 F.2d 598 (W.D. Pa.1926), *rev'd on other grounds*, 24 F.2d 195 (3d Cir. 1928); *Walter v. Duffy*, 287 F. 41 (3d Cir. 1923).

In arguing that this case should be treated as an exception, the Johnsons rely on the Board of Tax Appeals's decision in *Wallis Tractor Co. v. Commissioner*, 3 B.T.A. 981 (1926). The Johnsons' reliance on *Wallis Tractor* is misplaced. Although, in that case, the shares were traded on the Chicago Stock Exchange, a syndicate, by fixing the price and by determining who was eligible to buy, actually controlled the entire market for the shares. In contrast, an active and unrestricted market for Mattel stock existed. Here, when the options were exercised, many willing buyers and sellers actively traded Mattel stock on the New York Stock Exchange. The Johnsons were always free to sell their stock at the exchange price.

In *Kolom v. Commissioner*, 644 F.2d 1282 (9th Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 548, 70 L.Ed.2d 412 (1981), this court recently held that a restriction imposed on stock by § 16(b) of the Securities Exchange

Act of 1934[4] did not affect the determination of the stock's fair market value for purposes of assessing a minimum tax under I.R.C. § 56 when employee stock options are exercised. Section 16(b) required Kolom, an officer and director, to turn over to the corporation any profits realized upon sale of the stock within six months of the option's exercise date. We upheld the Commissioner's position that the fair market value of the stock was its mean price on the New York Stock Exchange on the date of the option's exercise. After pointing out that § 16(b) had no demonstrable effect upon the market value of the shares, we observed that "[s]ection 16(b) affects only the seller's ability to keep the profits after disposing of the stock, not the marketability of the stock itself." 644 F.2d at 1289.

*Kolom* shows a strong preference for using the stock exchange price as the fair market value of shares in determining the amount of minimum tax under I.R.C. §§ 56 and 57(a)(6). The case for using the exchange price is even stronger here than in *Kolom*. There § 16(b) would have required the taxpayer to surrender to the corporation part of the market price (the profits) had he sold the shares within six months of the option's exercise date. Here, the Johnsons are entitled to the full proceeds of any sale, although they would have lost long-term capital gains treatment had they sold their stock within three years of the option's exercise date. As a practical matter, undisclosed information concerning securities laws violations did not affect the price the Johnsons could have obtained for their Mattel stock on the dates they exercised their options.

AFFIRMED.

4. Section 16(b) of the Securities Exchange Act of 1934 provides in part:

For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer ... within any period of less than six months ... shall inure to and be recoverable by the issuer .... 15 U.S.C. § 78p(b).