ROSENTHAL CHIROPRACTIC OFFICES, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ALAN S. ROSENTHAL AND CATERINA A. ROSENTHAL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rosenthal Chiropractic Offices, Inc. v. Commissioner
Docket Nos. 30640-91, 30641-91
United States Tax Court
T.C. Memo 1993-331; 1993 Tax Ct. Memo LEXIS 334; 66 T.C.M. (CCH) 243; July 26, 1993, Filed *334 Decisions will be entered under Rule 155. P, a chiropractor, carried on his chiropractic business as an employee of C. P is the sole shareholder of C. C, which is also a petitioner in this consolidated case, was operated as a C corporation during its 1986 and 1987 fiscal years and as an S corporation during its 1988 and 1989 fiscal years. R disallowed various deductions claimed by C during the years in issue and also determined that P received constructive dividends from C. 1. Held: R's disallowance of consulting expenses claimed by C for its 1986 and 1987 taxable years is sustained. 2. Held, further, R's disallowance of automobile expenses claimed by C for its 1986 through 1989 taxable years is sustained. 3. Held, further, R's disallowance of telephone expenses claimed by C for its 1986 through 1989 taxable years is sustained. 4. Held, further, R's disallowance of travel and entertainment expenses claimed by C for its 1986 and 1987 taxable years is sustained. 5. Held, further, R's determination that Ps received constructive dividends from C during their 1987 taxable year is generally sustained. 6. Held, further, *335 R's various additions to tax against C for its 1986 and 1987 taxable years are sustained under sec. 6653, I.R.C.
7. Held, further, R's various additions to tax against Ps for their 1987 and 1988 taxable years are sustained under sec. 6653, I.R.C.
8. Held, further, R's additions to tax against C for its 1986 and 1987 taxable years are sustained under sec. 6661, I.R.C.
9. Held, further, R's addition to tax against Ps for their 1987 taxable year is sustained under sec. 6661, I.R.C.
10. Held, further, R's penalty against Ps for their 1989 taxable year is sustained under sec. 6662, I.R.C.
For petitioners: Theodore L. Craft. For respondent: Maureen T. O'Brien. HALPERN
HALPERN
MEMORANDUM OPINION HALPERN, Judge: Respondent has determined income tax deficiencies and additions to tax as follows: Rosenthal Chiropractic Offices, Inc. Docket No. 30640-91 Additions to Tax
Year Sec.
Sec. Sec.
Ended
Deficiency
6653(a)(1)
6653(a)(1)(A)
6653(a)(2)
9/30/86
$ 35,465
$ 1,773
-
50% of the
interest due
on $ 35,465
9/30/87
17,541
-
$ 877
-
Additions to Tax
Year
Sec.
Sec.
Ended
6653(a)(1)(B) 6661
9/30/86
-
$8,866
9/30/87
50% of the
4,385
interest due
on $ 17,541
*336 Alan S. Rosenthal and Caterina A. Rosenthal Docket No. 30641-91 Additions to Tax
Sec.
Sec.
Sec.  Year Deficiency
6653(a)(1)
6653(a)(1)(A)
6653(a)(1)(B)
1987
$ 26,986
-
$ 1,349
50% of the
interest due
on $ 26,986
1988
5,112
$ 256
-
-
1989
7,050
-
-
Additions to Tax
Sec.
Sec.
Year 6661
6662(a) 1987
$3,850
-
1988
-
-
1989
-
$ 1,410
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues for consideration involve certain deductions taken by petitioner Rosenthal Chiropractic Offices, Inc., a constructive dividend to petitioners Alan and Caterina Rosenthal, and various additions to tax. [1]
*337 Background
Certain facts have been stipulated. The stipulation of facts filed by the parties, and attached exhibits, are incorporated herein by this reference. Hereinafter, petitioners Alan and Caterina Rosenthal will be referred to as the Rosenthals or, individually, as Alan and Caterina, and petitioner Rosenthal Chiropractic Offices, Inc., will be referred to as the corporation. At the times the petitions herein were filed, the corporation had its principal place of business in Brookline, Massachusetts, and Alan and Caterina resided in Wellesly, Massachusetts. During the years 1985 through 1989, Alan was the sole shareholder and principal officer of the corporation. The corporation made returns for those years on the basis of a fiscal year ending on September 30. For its 1986 and 1987 years, the corporation was a C corporation, and, for its 1988 and 1989 years, it was an S corporation. Alan and Caterina made joint returns for 1987, 1988, and 1989 on the basis of a calendar year. Alan is a chiropractor. During the years in question, he carried on his chiropractic practice through the corporation. Stuart Rosenthal (Stuart) is Alan's older brother. Stuart is also a *338 chiropractor. In 1981, Stuart was convicted of mail fraud. Thereafter, Stuart lost his licence to practice chiropractic. He served a term in Federal prison and was released in 1985. Stuart regained his professional license in 1987. From his release in 1985 through part of 1987, the corporation employed Stuart (but not as a chiropractor). Alan's practice involves many patients referred to him by attorneys. Discussion
Issue 1. Consulting Expenses
The corporation assigns error to respondent's determination that consulting expenses claimed to have been paid by the corporation during its 1986 and 1987 years are not deductible. The claimed payments during the 1986 year are $ 2,200 to Robert Newall and $ 60,548 to Stuart. The claimed payments during the 1987 year are an unidentified payment of $ 2,780 [2] and a payment of $ 40,000 to Stuart. *339 With regard to the $ 2,200 payment to Robert Newall during the 1986 year, the corporation (in its petition) alleges as a fact upon which it relies that the payment was for consulting services of a "Dr. Newall". Exhibit 12-L is a copy of a check drawn on the corporation's bank account for $ 2,200, dated "10-31-85" to a "Robert Newal", containing the annotation "Repairs to Basement". The clear inference is that the check evidences the payment in question and that Robert Newell neither is a doctor nor performed consulting services. The corporation has not successfully rebutted that inference and we accept it. We find that the $ 2,200 was not for consulting services, as claimed by the corporation. The corporation not having otherwise established a basis for a deduction, none will be allowed. Respondent's determination with regard to this item is sustained. With regard to the $ 60,548 payment to Stuart during the 1986 year, the corporation (in its petition) alleges as a fact upon which it relies that "the amounts paid or charged to Dr. Stuart Rosenthal should be deductible by Petitioner as business losses even though mislabelled as 'consulting expenses' on Petitioner's [corporation's] *340 8609 return." We understand that allegation as a concession that the payment in question was not, in fact, for consulting or otherwise for services provided by Stuart during the 1986 year. Paragraph 27 of the stipulation establishes the fact of a payment of $ 60,548 and details the components of that payment. That paragraph further states that the payment originally was booked to a loan account of Stuart and subsequently was deducted as a consulting expense. Testimony at trial was to the effect that Stuart, signing Alan's name to checks of the corporation, made those payments on his own behalf. Because of the stipulation, we accept as a fact that $ 60,548 of funds of the corporation was paid out, on Stuart's behalf, during the 1986 year. The corporation has conceded that the payments were not for services. Section 165 allows a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise. The corporation has not carried its burden of showing that, in any sense, the payment constituted a "loss" to the corporation. Stuart was Alan's older brother. Stuart had been taken in by Alan after Stuart was released from jail. Before he went *341 to jail, Stuart had helped Alan with, among other things, Alan's educational expenses. The corporation did not report Stuart's check-writing activities to the police as a theft. The record contains no details of any legal action to recover any of the $ 60,548 from Stuart. We cannot overcome the inference that, because of the family relationship between Stuart and Alan, and whether or not Alan was aware of Stuart's check-writing activities as they were going on, once Alan learned of Stuart's actions, Alan, as principal officer of the corporation, acquiesced in those actions. Such acquiescence is not consistent with the corporation's claim of a loss under section 165 for tax purposes. See Franklin Mills v. Commissioner, 28 B.T.A. 218, 220-221 (1933). No testimony by Alan or other evidence rebuts the inference we have drawn. We thus find that the corporation did not suffer a loss on account of the payment of $ 60,548 on behalf of Stuart during its 1986 year. Accordingly, we sustain respondent's disallowance of any deduction on account of such payment. With regard to the payment of $ 2,780 made during the corporation's 1987 year, the corporation, *342 in its petition, alleges as a fact upon which it relies that "$ 2,790 was paid by Petitioner to Dr. Stuart Rosenthal which were actual checks to Stuart Rosenthal for actual consulting expenses." It is stipulated, however, that the $ 2,780 payment is "an unidentified payment". Stuart did testify that he worked for the corporation for a few months during 1987 as a chiropractor (after he regained his license). No checks, as claimed in the petition, have been produced, however, and we are not convinced that the "unidentified payment" in question represented payment to Stuart for consulting services. The corporation has not carried its burden of proving the payment in question to be a payment for consulting services. Accordingly, we sustain respondent's disallowance of any deduction. With regard to the payment of $ 40,000 made to Stuart during the corporation's 1987 year, the corporation (in its petition) alleges as facts upon which it relies the following: m) During the time in question, Dr. Stuart Rosenthal ended up suing Dr. Alan Rosenthal and Rosenthal Chiropractic Offices, Inc. alleging that Dr. Alan Rosenthal had misappropriated business opportunities. One of the items he *343 alleged was that he wanted return of Rosenthal Chiropractic Offices, Inc. to him. n) During 8709, Petitioner paid $ 40,000 to Dr. Stuart Rosenthal in full settlement of the lawsuit. * * * q) Petitioner claims that the $ 40,000 settlement paid out of Rosenthal Chiropractic Offices, Inc. was an ordinary and necessary business expense for protection of corporate existence and should be properly deductible by Petitioner.
Stipulated into evidence is a copy of a summons and complaint in a civil action (the civil action) brought in 1987 by Stuart against Alan (Rosenthal v. Rosenthal, No. 87-2327, Mass. Super. Ct. 1988). The complaint in the civil action alleges breach of fiduciary duty, breach of contract, conversion and unjust enrichment, and, in addition, seeks an accounting with respect to "certain property and business" entrusted to Alan. Stated as factual allegations (among other factual allegations) are that, in 1982, at about the time Stuart was incarcerated, he entrusted to Alan a chiropractic business located in an office at 367 Harvard Street, Brookline, Massachusetts, which chiropractic business Alan was to return to Stuart upon Stuart's release from prison and *344 the reinstatement of his professional license. Alan's alleged failure to return the business apparently forms the basis of some, if not all, of Stuart's requests for relief. The corporation neither is a party to the civil action nor is mentioned in any part of either the summons or complaint. Also stipulated into evidence is a copy of a settlement agreement, dated October 7, 1987, between Alan and Stuart, settling the civil action. Alan agrees to pay Stuart $ 40,000. The corporation is mentioned in the settlement, but only to the effect that Stuart shall return to Alan any property of the corporation in his possession. The corporation's tax returns for its taxable years ending in 1985 through 1988 have been stipulated into evidence and all state that the corporation was incorporated on August 24, 1983. The corporation claims a deduction for $ 40,000 under section 162(a) for an ordinary and necessary expense paid or incurred during the taxable year in carrying on a trade or business. The payment was in discharge of a settlement agreement entered into by Alan; the corporation was not a party to that agreement or to the underlying suit that gave rise to it. It was not *345 even in existence when the suit was initiated. The corporation claims that the payment was made to protect its existence. We do not see how that was so. There are no facts in evidence that show how either its operations or existence were threatened by Stuart's suit. The corporation has not carried its burden of showing that the expenditure in question was either ordinary or necessary. See Welch v. Helvering, 290 U.S. 111 (1933) (generally, the payment of the debt or obligation of another is not an ordinary and necessary expense that may be deducted from gross income). The facts here do not equate to those in Catholic News Publishing Co. v. Commissioner, 10 T.C. 73 (1948), and those few similar cases in which the payment of the debt of another was made to prevent irreparable damage to the taxpayer's business standing and repute. Accordingly, we sustain respondent's deficiency to the extent allocable to the disallowance of the deduction in question. Issue 2. Automobile Expenses
During its 1986 taxable year, the corporation leased a Mercedes Benz automobile, which was driven by Caterina. It owned a second *346 automobile, which was driven by Alan. During its 1987 through 1989 taxable years, the corporation leased both a Mercedes Benz and a BMW, which were driven by Caterina and Alan, respectively. Alan and Caterina neither owned nor leased any other automobiles during those years. The parties have stipulated that neither the corporation nor Alan or Caterina maintained any records pertaining to the mileage or uses of those automobiles during the periods in question. The parties have stipulated that, during its 1986 taxable year, the corporation had only one office, in Brookline, Massachusetts, and that, during its 1987 through 1989 taxable years, it had offices in Mattapan and Brookline, Massachusetts. They further have stipulated that all services performed by the corporation and Alan were performed on the corporation's premises. Caterina did not testify at the trial. Alan testified in the most general terms about his "business use" of the corporation-provided automobile. Without providing any detail, he testified that he used the car to visit attorneys from whom he would solicit patients, that he used it when he entertained persons in connection with his business, and for other *347 business-related purposes. Respondent disallowed 95 percent of the automobile expenses claimed by the corporation as failing to qualify as ordinary and necessary business expenses. Section 162 allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. In its petition, the corporation claimed that it had proper "verification" for the claimed automobile expenses. [3] Such verification was not made. The sum total of evidence in support of the business use of the automobiles in question is the testimony of Alan. That testimony we found to be lacking in any detail, imprecise, and worthy of virtually no credence. We think that respondent's allowance of a deduction of 5 percent of the claimed automobile expenses is generous and exceeds any amount we would allow were we to make an estimate under the rule of Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). Moreover, for the corporation's 1987 through 1989 taxable years, the provisions of section 274(d)(4) apply. There is insufficient evidence corroborating Alan's own statements on behalf of the corporation with respect *348 to the elements required to be shown by that section, and, accordingly, for that reason, we would disallow any deduction in excess of that allowed by respondent. We hold that no deduction is available to the corporation under section 162 in excess of that allowed by respondent and, thus, sustain respondent's determinations in full. [4]
Issue 3. Telephone Expenses
This issue relates *349 to the expenses of cellular telephones installed in the automobiles owned or leased by the corporation and driven by Alan and Caterina. As with the automobiles discussed in the previous section of this opinion, no record was maintained of the business use of the cellular telephones. The only evidence in the record concerning the business use of the telephones is Alan's testimony with regard thereto. His testimony was vague and imprecise, and amounted only to the statement that he made some use of the phone for business purposes. He stated that, during 1986, the phone was used primarily for personal purposes and that, for 1987 through 1989, he could not recall whether it was used primarily for business or personal purposes. Because of the imprecise and vague nature of Alan's testimony, we accord it no weight. There being no other evidence in the record showing any business use of the phones, we find that the corporation has failed to carry its burden of proof on this issue for any of the years in question. We hold that no deduction is available to the corporation under section 162 and, thus, sustain respondent's determination in full. [5]
*350 Issue 4. Travel and Entertainment Expenses
Certain amounts have been stipulated by the parties as having been spent by the corporation for travel and entertainment during its 1986 and 1987 taxable years. Such amounts were spent for, among other things, a trip to the Superbowl in 1986, tickets to New England Patriots and Boston Red Sox games, and various gifts. It is further stipulated that no log or other substantiation, as required by section 274, was maintained for the claimed expenses. The only evidence in the record concerning those expenditures is Alan's testimony, which we found to be imprecise and vague. He testified that, in 1986, he entertained 25 to 50 attorneys from whom he received referrals but that their names were too numerous to mention. Because of the imprecise and vague nature of Alan's testimony we accord it no weight. There being no other evidence in the record showing any business purpose for such travel, entertainment, and gifts, we find that the corporation has failed to carry its burden of proof on that issue for any of the years in question. Moreover, for all of those years, we find inadequate substantiation to satisfy the requirements of section *351 274(d). We hold that no deduction is available to the corporation under section 162 and, thus, sustain respondent's determination in full. Issue 5. Constructive Dividend
Respondent determined that the following amounts deducted by the corporation for its 1987 taxable year constitute constructive dividends to Alan: Legal settlement
$ 40,000
Depreciation
[1] 2,542
Travel and entertainment
18,383
Automobile expenses
[2] 9,169
Total
$ 70,094
In the petition filed by Alan and Caterina, error is *352 assigned to respondent's determination of a constructive dividend. No particular facts are stated as being relied on in support of that assignment of error. [6] As best we can tell, Alan and Caterina rely solely on the deductibility of those amounts to the corporation as a defense to the determination of the constructive dividend. Since they have conceded, or we have found, that none of the items in question are deductible to the corporation, we see no further issues of fact to determine. Alan and Caterina have not carried their burden of disproving the constructive dividend. Accordingly, we hold that the items in question did give rise to a constructive dividend and, for that reason, sustain respondent's determination in that regard. *353 Issue 6. Additions to Tax
A. Section 6653(a) -- Negligence
Section 6653(a) imposes additions to tax where the taxpayer's underpayment is due to negligence or intentional disregard of rules or regulations (hereinafter referred to simply as negligence). Section 6653(a)(1), for returns due before 1987 or in 1989, and section 6653(a)(1)(A), for returns due after 1986, but before 1989 impose an addition to tax equal to 5 percent of the entire underpayment if any portion of such underpayment is due to negligence. Section 6653(a)(2), for returns due before 1987, and section 6653(a)(1)(B), for returns due after 1986, but before 1989, impose an addition to tax equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment due to negligence. Respondent has determined the entire underpayment for both the 1986 and 1987 taxable years of the corporation to be due to negligence and similarly for the 1987 taxable year of the Rosenthals. Respondent has determined that at least a part of the Rosenthals' underpayment for their 1988 year is due to negligence. Petitioners have the burden of proving respondent's determinations *354 to be erroneous. Rule 142(a). 1. The Corporation
An underpayment for purposes of section 6653(a), is the amount by which the tax liability exceeds the tax shown on a timely filed return. Secs. 6653(c)(1), 6211(a). The corporation's 1986 return was not timely filed. Inasmuch as there was no timely filed return for that year, the amount shown on the timely filed return is zero, and the underpayment equals the entire tax liability. Emmons v. Commissioner, 92 T.C. 342, 348-349 (1989), affd. 898 F.2d 50 (5th Cir. 1990). Where, as here, an underpayment is caused by the taxpayer's failure to timely file an income tax return, such underpayment is due to negligence if the taxpayer lacks reasonable cause for such failure. See id. at 349. The corporation has not shown reasonable cause for its failure to timely file its 1986 return, and therefore we find lack thereof. Accordingly, the entire underpayment for that year is due to negligence, and we sustain respondent's additions to tax under section 6653(a)(1) and (2). The corporation's 1987 return was prepared by David Hentoff, a certified *355 public accountant. As a general rule, the duty of filing accurate returns cannot be avoided by placing responsibility on a tax return preparer. Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987). Nevertheless, this Court has declined to sustain the addition to tax under section 6653(a) in cases in which the taxpayer relied in good faith on the advice of a tax expert. See cases cited id. In those cases, the reliance was with regard to complex transactions, and the position taken on the return with respect to the items had a reasonable basis. See id. Where the taxpayer fails to furnish necessary information to an accountant for the preparation of a tax return, the taxpayer is liable for the negligence penalty. See Johnson v. Commissioner, 74 T.C. 89, 97 (1980), affd. 673 F.2d 262 (9th Cir. 1982). The parties have stipulated that, for both the corporation's 1986 and 1987 taxable years, amounts were improperly deducted as depreciation, but, in fact, represented expenditures for sport tickets, personal furniture, and camera equipment. Also, we have disallowed deductions for automobile *356 expenses, telephone expenses, and travel and entertainment expenses. In substantial part, we have disallowed those deductions based on the corporation's failure to substantiate the ordinary and necessary business character of those expenses. In particular, the corporation was unable to provide any substantiation independent of Alan's testimony as to the business nature of those deductions. The corporation has not shown that it provided Mr. Hentoff any better substantiation than was presented to this Court. In light of the requirements of section 274(d), we do not see how Mr. Hentoff could have believed that the corporation was entitled to any deductions for such items for its 1987 (or 1988 or 1989) taxable years. Moreover, the items discussed present tax questions involving personal use of "business" property, questions with regard to which we believe Alan may have understood the rules quite well and may have been shopping for a favorable tax opinion when he retained David Hentoff. Indeed, the corporation's accountant before David Hentoff, Stanley Jacobs, left the employ of the corporation in part because he could not prepare the corporation's 1986 return in the fashion it desired. *357 Mr. Jacobs testified: "There were too many personal expenditures within the corporation." He testified that he had told Alan that he was unwilling to prepare for the corporation a return which claimed deductions for such items. Given the facts and circumstances here extant, we do not believe that the corporation can lay the blame for the disallowed items here in question for 1987 on the back of its accountant. Finding no other grounds that show a lack of negligence, we conclude that, with regard to the misclaimed depreciation deductions, the automobile expenses, the telephone expenses, and the travel and entertainment expenses, the corporation has not carried its burden of showing its conduct in deducting those expenditures to be other than negligent. For 1987, we sustain the addition to tax for negligence under section 6653(a)(1)(A). With regard to the items discussed in this paragraph, we also sustain the addition to tax under section 6653(a)(1)(B). With regard to "consulting payments" deducted for 1987, the corporation has introduced no evidence pertaining to the $ 2,780 payment stipulated to be "an unidentified payment". We sustain an addition to tax under section 6653(a)(1)(B) *358 with regard to that payment. As to the $ 40,000 payment made in settlement of the suit brought by Stewart, we believe that an honest question could arise as to its proper tax treatment. Apparently, David Hentoff inquired as to the particulars of that payment, consulted with his partners, and advised the deductibility of it. We will not sustain the addition to tax under section 6653(a)(1)(B) with regard to that payment. 2. The Rosenthals
For the Rosenthals' 1987 taxable (calendar) year, respondent determined an underpayment of $ 26,986, all of which she determined was due to negligence. The adjustment that gave rise to that underpayment was an increase in gross income resulting from the constructive dividend, discussed above. The components of that constructive dividend were: Legal settlement, $ 40,000; depreciation, $ 2,542; travel and entertainment, $ 18,383; and automobile expenses, $ 9,169. Alan was the sole shareholder and principal corporate officer of the corporation, which is the source of that dividend. He also had full knowledge of the expenditures that gave rise to that dividend. Except with regard to the $ 40,000 legal settlement, we agree with respondent *359 that it was negligent for Alan not to include in income (as a dividend) the expenditures in question. The expenditures were personal in nature, benefiting Alan and Caterina. For the reasons discussed above, Alan cannot rely on David Hentoff in defense of the negligence addition. We find that, to the extent of the depreciation, travel and entertainment, and automobile items included in the constructive dividend, an underpayment due to negligence exits. We sustain respondent's addition under section 6653(a)(1)(A) and (B) accordingly. For the Rosenthals' 1988 taxable (calendar) year, respondent determined an underpayment of $ 5,112, all of which she determined was due to negligence. The adjustment that gave rise to that underpayment was an increase in gross income resulting from the disallowance of deductions to the corporation (then an S corporation) for automobile, telephone, and travel and entertainment expenses. For the reasons discussed with regard to the Rosenthals' 1987 taxable year, we sustain respondent's determination of an addition to tax for negligence for the Rosenthals' 1988 taxable year. B. Section 6661 -- Substantial Understatement of Liability
Section 6661 *360 provides for an addition to tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement except to the extent that a taxpayer has adequately disclosed his or her position or has substantial authority for the tax treatment of an item. Respondent has determined additions to tax under section 6661 against the corporation for both its 1986 and 1987 tax years and against the Rosenthals for their 1987 tax year. Petitioners bear the burden of showing they are not subject to those additions to tax determined by respondent. Rule 142(a). We find that neither the corporation nor the Rosenthals have shown either adequate disclosure or substantial authority for the positions that each, respectively, took on the returns that gave rise to the understatements in question. Accordingly, we sustain respondent's determination of additions under section 6661 for each year in question for each petitioner. C. Section 6662(a) -- Accuracy-Related Penalty
Section 6662 provides for an accuracy-related penalty in the amount of 20 percent of the portion of any underpayment attributable to, among other things, negligence or intentional disregard of rules and *361 regulations. Respondent determined a penalty against the Rosenthals for their 1989 taxable (calendar) year on account of negligence or intentional disregard of rules and regulations. The penalty was determined against the whole of the Rosenthals' underpayment for 1989. The adjustment that gave rise to that underpayment was an increase in gross income resulting from the disallowance of deductions to the corporation (then an S corporation) for automobile, telephone, and travel and entertainment expenses. For the reasons discussed with regard to the section 6653(a) addition and the deficiency for the Rosenthals' 1987 taxable year, we sustain respondent's determination of an accuracy-related penalty for 1989 under section 6662. Decisions will be entered under Rule 155. Footnotes
1. An issue raised by the corporation in its petition concerning carryforwards of a net operating loss and investment tax credit from the corporation's 1987 taxable year appears to be mooted by our decision herein. We will not further discuss it.↩
2. Respondent's statement of income tax changes states that the amount in question is as indicated, while her explanation of that amount treats it as being $ 10 greater. We will treat it as being as we have stated it.↩
3. For the corporation's 1988 and 1989 taxable years, it was an S corporation. Respondent's disallowance of the automobile expenses in question is reflected in the notice of deficiency sent to Alan and Caterina and the petition filed by them. Although not explicitly made in that petition, we will impute the same "verification" allegation made in the corporation's petition. For convenience, we will refer only to the corporation's argument or position.↩
4. For the corporation's 1988 and 1989 years, years in which it was an S corporation, the effect will be directly on Alan and Caterina's returns for 1988 and 1989, respectively.↩
5. As with the automobile expenses, for the corporation's 1988 and 1989 years, years in which it was an S corporation, the effect will be directly on Alan and Caterina's returns for 1988 and 1989, respectively.↩
1. The corporation concedes that such "depreciation", which, in fact represents purchases of sports tickets, personal furniture, and camera equipment, is not deductible.↩
2. The total amount of automobile expenses disallowed for the corporation's 1987 year is $ 17,518 (95 percent of the claimed amount of $ 18,440). Alan and Caterina reported $ 8,788 as a "fringe benefit" on their 1987 return on account of their use of the corporation's cars.Subtracting $ 8,788 from $ 17,518 leaves $ 8,730.That would seem to limit the amount of the constructive dividend. The parties can address this discrepancy in their Rule 155 computation.↩
6. Except that petitioner does allege facts concerning the calculation of the constructive dividend due to use of the corporation's automobiles. We have dealt with that calculation in the previous footnote and believe that all issues concerning such calculation can be resolved under Rule 155.↩