T.C. Summary Opinion 2003-70

UNITED STATES TAX COURT

CHARLES R. AND DRU L. HAGGART, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2087-02S.               Filed June 9, 2003.

Charles R. and Dru L. Haggart, pro se.

<u>Jack T. Anagnostis</u>, for respondent.


POWELL, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463[1] of the Internal Revenue Code
in effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.

_____

[1] Unless otherwise indicated, subsequent section references are
to the Internal Revenue Code in effect for the years in issue,
and Rule references are to the Tax Court Rules of Practice and
Procedure.

Respondent determined deficiencies in petitioners' 1996 and 1997 Federal income taxes and accuracy-related penalties as follows:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1996 | $7,359 | $1,467.40 |
| 1997 | 10,536 | 2,107.20 |

After concessions,[2] the issues are (1) whether petitioners are liable for the accuracy-related penalties under section 6662(a), and (2) whether petitioner Dru Haggart (Mrs. Haggart) is entitled to relief from joint and several liability under section 6015.  Petitioners resided in Holland, Pennsylvania, at the time the petition was filed.

## Background

Petitioners are married.  Mrs. Haggart has a high school education, and is employed as a travel agent for B&B Travel, Inc. B&B Travel reports Mrs. Haggart's yearly wages to her on Form W-2, Wage and Tax Statement.  Petitioner Charles Haggart (Mr. Haggart) is a subcontractor for Roman Building Products, Inc. (Roman).  Roman is engaged in the business of selling and installing materials, such as shower doors, mirrors, and shelving, in new residential homes.  Roman pays Mr. Haggart biweekly and reports total earnings to him for each year on Form 1099-MISC, Miscellaneous Income.

---

[2] Petitioners conceded the deficiencies for the years in issue.

Petitioners maintained one joint bank account during 1996 and 1997.  Using this account, petitioners deposited all wages and business income and paid all business and household expenses.

Petitioners hired John J. Poltonowicz (Mr. Poltonowicz), a certified public accountant, to prepare their 1996 and 1997 Federal income tax returns.  Mrs. Haggart provided Mr. Poltonowicz with her Forms W-2, Mr. Haggart's Forms 1099-MISC, and a list of his business expenses.  For additional guidance in preparing the 1996 and 1997 returns, Mr. Poltonowicz reviewed petitioners' returns from previous years which were prepared by a different accountant.

For 1996 and 1997, Mr. Poltonowicz prepared Schedules C, Profit or Loss From Business, for Mr. Haggart's business.  Petitioners claimed, and respondent disallowed, the following amounts on their Schedules C as deductions and cost of goods sold:[3]

|                     | Claimed |        | Disallowed |        |
| Schedule C          | 1996    | 1997   | 1996    | 1997   |
| --- | --- | --- | --- | --- |
| Total Expenses[1]   | $24,710 | $28,863 | $12,360 | $14,763 |
| Cost of Goods Sold  | 21,456  | 31,596 | 21,456  | 31,596 |

[1] These expenses included depreciation, insurance, legal and professional services, supplies, utilities, laundry, bank charges, and car and truck expenses.

It is unclear how the claimed Schedule C expenses and cost of

[3]  Respondent also determined that Mr. Haggart failed to report $79 of income attributable to wages he earned in 1996 from USX Corp. reported to him on a Form W-2.

goods sold were computed; it is clear that there is no documentation in support of these amounts, nor was there any attempt by Mr. Poltonowicz to verify these items. At trial, petitioners and Mr. Poltonowicz were unable to explain the sources from which these items were derived.

## Discussion

As a preliminary matter, we address Mrs. Haggart's contention at trial that Mr. Haggart was an employee of Roman rather than a self-employed independent contractor. In this context, the issue is peculiar because petitioners took the position on their tax returns that Mr. Haggart was self-employed and both Mr. Haggart and respondent agree that he was self-employed. Additionally, Mrs. Haggart did not raise the issue in the petition filed with this Court. Indeed, in the petition she prayed that "Spouse seeks emancipation from taxpayer's responsibility for self-employment taxes." The position taken in the petition, therefore, assumes that there was a liability for self-employment taxes, and certainly respondent was entitled to assume this in preparing for trial. If we were to allow Mrs. Haggart to raise this issue at this late time, respondent would be unfairly prejudiced. See Toyota Town, Inc. v. Commissioner, T.C. Memo. 2000-40, affd. sub nom. Bob Wondries Motors, Inc. v. Commissioner, 268 F.3d 1156 (9th Cir. 2001). Accordingly, we

do not entertain the issue. See Rule 34(b)(4). We turn to the issues that are properly before the Court.

Accuracy-Related Penalties

Section 6662(a) provides that "there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which this section applies." Section 6662(b) provides in part:

> SEC. 6662(b). Portion of Underpayment to Which Section Applies.--This section shall apply to the portion of any underpayment which is attributable to 1 or more of the following:
>
> (1) Negligence or disregard of rules or regulations.
>
> (2) Any substantial understatement of income tax.[4]

Negligence is defined as the "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Korshin v. Commissioner, 91 F.3d 670, 672 (4th Cir. 1996), affg. T.C. Memo. 1995-46. Negligence "includes any failure to make a reasonable attempt to comply with the provisions" of the Internal Revenue Code. Sec. 6662(c). "'Negligence' also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly." Sec. 1.6662-3(b)(1), Income Tax Regs.

---

[4] We need not address whether petitioners' underpayments were substantial because we hold that petitioners are liable for the accuracy-related penalties due to negligence.

The disallowed deductions and costs of goods sold in 1996 and 1997 with respect to Mr. Haggart's Schedules C business were claimed by petitioners without any documentation or explanation. In short, these items appear to have been totally fictitious. Accordingly, petitioners' underpayments were, at best, attributable to negligence.

Petitioners attempt to deflect the accuracy-related penalties on the ground that they relied on the advice of their accountant. Generally, a taxpayer may avoid the imposition of the accuracy-related penalty if "there was a reasonable cause * * * and that the taxpayer acted in good faith". Sec. 6664(c). Whether the taxpayer acted with reasonable cause and in good faith is determined by the relevant facts and circumstances and, most importantly, the extent to which the taxpayer attempted to assess the proper tax liability. See Neely v. Commissioner, 85 T.C. 934 (1985); Stubblefield v. Commissioner, T.C. Memo. 1996-537; sec. 1.6664-4(b)(1), Income Tax Regs.

Reliance on the advice of a competent adviser can be a defense to the accuracy-related penalty. See United States v. Boyle, 469 U.S. 241, 250 (1985). But, reliance on professional advice is not automatically a defense to negligence. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991); see also sec. 1.6664-4(c)(1), Income Tax Regs. The taxpayer must establish, inter

alia, that the taxpayer provided necessary and accurate information to the adviser.  See, e.g., Rule 142(a); <u>Ellwest Stereo Theatres of Memphis, Inc. v. Commissioner</u>, T.C. Memo. 1995-610.[5]

Although the record is silent concerning Mr. Poltonowicz's qualifications, we are willing to assume that he was a competent professional.  Petitioners did not establish, however, that they supplied Mr. Poltonowicz with the necessary documentation to substantiate the costs of goods sold and the disallowed deductions.  See <u>Johnson v. Commissioner</u>, 74 T.C. 89, 97 (1980), affd. 673 F.2d 262 (9th Cir. 1982).  Indeed, there was no such documentation.  In sum, we find petitioners did not reasonably rely on the advice of their accountant.

<u>Relief From Joint and Several Liability</u>

We initially note that Mrs. Haggart requests relief only from the self-employment tax liabilities imposed as a result of Mr. Haggart's business.  When, as here, a joint return is filed, the liability for the self-employment tax of one spouse is a

---

[5]  Petitioners have not argued that either sec. 7491(a) or (c) applies to this case to shift the burden of proof and/or production.  Sec. 7491 applies to court proceedings arising from examinations commencing after July 22, 1998.  Internal Revenue Service Restructuring & Reform Act of 1998 (RRA), Pub. L. 105-206, sec. 3001, 112 Stat. 726.  It would appear that the examination for 1997 commenced after that date.  With regard to the burden of proof under sec. 7491(a), petitioners have not satisfied the requirements of that section.  Under sec. 7491(c) respondent has the burden of production with respect to the sec. 6662(a) penalties and respondent has satisfied that burden.

joint and several liability as to each spouse under section 6013(a). See Travers v. Commissioner, T.C. Memo. 1982-88. Section 6015, however, may relieve the requesting spouse of a liability for tax attributable to an understatement of tax.[6] Sec. 6015(b). Here, the understatements are attributable each year to the disallowed Schedule C deductions and cost of goods sold. Those disallowed amounts increased petitioners' income tax liabilities, of which the self-employment tax liabilities are only a part. With this in mind, we turn to the provisions of section 6015.

A requesting spouse may elect relief from joint and several liability under section 6015.[7] There are three types of relief available: (1) Section 6015(b)(1) provides full relief from joint and several liability; (2) section 6015(c) provides separate tax liability available to divorced or separated taxpayers;[8] and (3) section 6015(f) provides equitable relief

---

[6] An understatement is the "excess of the amount of tax required to be shown on the return for the taxable year, over the amount of tax imposed which is shown on the return". Secs. 6015(b)(3), 6662(d)(2)(A).

[7] Sec. 6015 applies to any liability for tax arising before July 22, 1998, but remaining unpaid as of that date. H. Conf. Rept. 105-599, at 255 (1998), 1998-3 C.B. 747, 1009. Mrs. Haggart's tax liabilities arose in 1996 and 1997, and remain unpaid.

[8] Relief under sec. 6015(c) is available if the requesting spouse is no longer married to, is legally separated from, or is not living in the same household with the nonrequesting spouse at the time the election is filed. Sec. 6015(c)(3)(A)(i). Mrs.
(continued...)

from joint and several liability in certain circumstances if sections 6015(b) and (c) are unavailable.

A.  <u>Section 6015(b) Relief</u>

Section 6015(b) provides in part:

SEC. 6015.   RELIEF FROM JOINT AND SEVERAL LIABILITY ON JOINT RETURN.

*       *       *       *       *       *       *

(b) Procedures for Relief From Liability Applicable to All Joint Filers.--

(1) In general.--Under procedures prescribed by the Secretary, if--

(A) a joint return has been made for a taxable year;

(B) on such return there is an understatement of tax attributable to erroneous items of 1 individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election,

---

[8](...continued)
Haggart is not eligible for relief under sec. 6015(c) because she was married to and living with Mr. Haggart at the time she made the election.

then the other individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.

These requirements are expressed in the conjunctive, and a requesting spouse must satisfy all the requirements of section 6015(b)(1). Subparagraph (C) requires that the requesting spouse "did not know, and had no reason to know, that there was * * * [an] understatement" of tax. Sec. 6015(b)(1)(C).[9] Mrs. Haggart seeks relief from the self-employment taxes imposed as a result of Mr. Haggart's business because, according to the Form 12507, Innocent Spouse Statement, she submitted to respondent, she "maintained separate employment" and "had no role in the operation or control" of Mr. Haggart's "self-employment and business."[10] But, section 6015(b)(1)(C) requires an analysis of

---

[9] As part of the RRA, supra, sec. 3201(a), 112 Stat. 734, Congress repealed sec. 6013(e) and enacted sec. 6015(b). The language of sec. 6015(b)(1)(C) is similar to the language in former sec. 6013(e)(1)(C). Both provisions require that the requesting spouse "did not know, and had no reason to know" that there was an understatement of tax. H. Conf. Rept. 105-599, supra at 249, 1998-3 C.B. at 1003. Accordingly, the case law interpreting the language under sec. 6013(e) will be applied in interpreting the same language under sec. 6015(b). Butler v. Commissioner, 114 T.C. 276, 283 (2000).

[10] It is important to note that Mrs. Haggart's position as to whether she understood Mr. Haggart to be self-employed or an employee of Roman is inconsistent. On Form 12507, Innocent Spouse Statement, and the petition filed with this Court, she indicated that Mr. Haggart was self-employed. At trial, however, she testified that she understood Mr. Haggart was an employee of Roman because he got "a paycheck every two weeks * * *. He just went from one job, and I always thought he was an employee." In any event, Mrs. Haggart's belief as to Mr. Haggart's employment classification has no bearing on our analysis of sec. 6015(b).

the requesting spouse's knowledge, or reason to know, of the understatement of tax. The understatements of tax in this case result from the overstatements of the costs of goods sold and the other Schedule C disallowed deductions. The proper inquiry is whether Mrs. Haggart knew, or had reason to know, of the understatements of tax attributable to these items that were reported on petitioners' Schedules C for 1996 and 1997.

With the proper inquiry in mind, there are two aspects of section 6015(b)(1)(C). First, "where a spouse seeking relief has actual knowledge of the underlying transaction * * * innocent spouse relief is denied." Cheshire v. Commissioner, 115 T.C. 183, 192-193 (2000), affd. 282 F.3d 326 (5th Cir. 2002); see also Purcell v. Commissioner, 826 F.2d 470, 473-474 (6th Cir. 1987), affg. 86 T.C. 228 (1986). For purposes here, we are willing to assume that Mrs. Haggart may not have had actual knowledge of the underlying transaction.

Nonetheless, she must still satisfy the second prong of section 6015(b)(1)(C). The requesting spouse must not have reason to know of the underlying transaction which gives rise to the deficiency at issue. See Bokum v. Commissioner, 94 T.C. 126 (1990), affd. 992 F.2d 1132 (11th Cir. 1993). Mrs. Haggart had reason to know of the underlying transaction.

Petitioners maintained a joint bank account into which petitioners' income was deposited and from which all household expenses, including expenses related to Mr. Haggart's employment, were paid. Mrs. Haggart, upon reviewing bank statements or

canceled checks, surely would have reason to know of the expenses paid for in Mr. Haggart's business.  See Kenney v. Commissioner, T.C. Memo. 1995-431.

Mrs. Haggart argues that she did not have reason to know of the disallowed deductions and unreported income because she "just dropped off the typical stuff * * * [documentation] I normally do and just picked it * * * [completed return] up at a later date." But, Mrs. Haggart provided the accountant, Mr. Poltonowicz, with the documents necessary to prepare the returns, including the Forms W-2 and 1099-MISC and Mr. Haggart's "list of business expenses."  Mrs. Haggart must have reviewed the documents before leaving them with Mr. Poltonowicz.  Otherwise, she could not have known what she gave to him.  Consequently, Mrs. Haggart had reason to know of the overstated business expenses claimed on the 1996 and 1997 Schedules C.

Additionally, Mrs. Haggart testified that she does not recall reviewing the return before signing it.  But, "a spouse cannot obtain the benefits of section * * * [6015] by simply turning a blind eye to--by preferring not to know of--facts fully disclosed on a return, of such a large nature as would reasonably put such spouse on notice that further inquiry would need to be made."  Levin v. Commissioner, T.C. Memo. 1987-67; see also Cohen v. Commissioner, T.C. Memo. 1987-537.  Mrs. Haggart cannot escape joint and several liability for the large unsubstantiated amounts unambiguously listed on the Schedules C by simply choosing not to review the return.

We find that Mrs. Haggart had reason to know of the understatements of tax. As a result of our conclusion, we need not determine whether Mrs. Haggart satisfies the other requirements, and hold that Mrs. Haggart is not eligible for relief from joint and several liability under section 6015(b).

B. Section 6015(f) Relief

Section 6015(f) provides:

SEC. 6015(f) Equitable Relief.--Under procedures prescribed by the Secretary, if--

(1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and

(2) relief is not available to such individual under subsection (b) or (c),

the Secretary may relieve such individual of such liability.

To prevail, Mrs. Haggart must show that respondent's denial of equitable relief under section 6015(f) was an abuse of discretion. Jonson v. Commissioner, 118 T.C. 106, 125 (2002); Cheshire v. Commissioner, supra at 198; Butler v. Commissioner, 114 T.C. 276, 292 (2000). As directed by section 6015(f), respondent prescribed procedures to use in determining whether the requesting spouse qualifies for relief under section 6015(f). Those procedures are found in Rev. Proc. 2000-15, 2000-1 C.B. 447.[11] The revenue procedure includes partial lists of positive and negative factors to be considered, including whether the

---

[11] Rev. Proc. 2000-15, sec. 3, 2000-1 C.B. 447, 448, is applicable for any liability for tax arising on or before July 22, 1998, that was unpaid on that date.

spouse had reason to know of the items giving rise to the increased liability and whether she significantly benefited from the unpaid liability.  See Rev. Proc. 2000-15, sec. 4.03(2)(b), supra, 2000-1 C.B. at 449.

Mrs. Haggart failed to introduce any evidence to establish that respondent's denial of equitable relief was an abuse of discretion.  Additionally, we found that Mrs. Haggart had reason to know of the disallowed deductions and omitted income.  Furthermore, it appears she would have significantly benefited from the unpaid liabilities.  As a result, we hold that Mrs. Haggart is not eligible for relief from joint and several liability under section 6015(f).

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered for respondent.